Rodney BURNETT, Plaintiff-Appellant,

v.

Otis BOWEN, Secretary, Department of Health and Human Services, Defendant-Appellee.

No. 86–1123.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 6, 1986.

Decided Sept. 21, 1987.

Richard B. Muller, Costello, Ling, Young & Dvorak, Ltd., Springfield, Ill., for plaintiff-appellant.

Rosemary Rodriguez, U.S. Dept. of Health & Human Svc. Chicago, Ill., for defendant-appellee.

Before COFFEY and FLAUM, Circuit Judges, and PARSONS, Senior District Judge.*

COFFEY, Circuit Judge.

The plaintiff-appellant Rodney Burnett appeals the district court's order granting the Secretary of Health and Human Services' motion for summary affirmance of her determination that Burnett was not entitled to disability benefits before November 13, 1983, under the Social Security Act. We reverse and remand.

## I. FACTS

Rodney Burnett, the plaintiff-appellant, collapsed at his place of employment on March 22, 1982, with a grand mal seizure [1] diagnosed as having been caused by a large tumor. Some three weeks later on April 15 the tumor was surgically excised. On a follow up visit after a three-and-a-half-month convalescence period, the treating surgeon estimated he would be disabled for at least another six months.

Even though Burnett received physical therapy treatments for several months and made some progress in his recovery, he continued to suffer from weakness in his right leg as well as experiencing difficulty with sudden movements of his right arm and leg. The tumor reoccurred, and the appellant suffered another grand mal seizure in December 1982.

Burnett initially filed an application for disability benefits on May 12, 1982 (less than two months after his collapse on March 22, 1982) claiming he had been disabled since March 22, 1982. Administrative Law Judge ("ALJ") Julian Cosentino, in a decision dated May 18, 1983, found that Burnett possessed "the residual functional capacity to perform the full range of sedentary work." The ALJ reviewed several medical reports and stated in his "eval-uation of the evidence" that he had considered Burnett's complaints of pain and fatigue in reaching his decision. The Department of Health and Human Services' Appeals Council rejected Burnett's request for review on July 1, 1983.[2]

Burnett reapplied for disability benefits on August 1, 1983, describing his disabling condition as a "brain tumor growing back" "weakness on right side" and "seizures" and also requested re-opening of ALJ Cosentino's decision of May 18, 1983, based on new evidence including: (1) a report from the Illinois Department of Rehabilitation Services stating that he was too severely disabled to benefit from vocational training or job placement services; (2) a report from his physician, Dr. Miller, that the plaintiff has been unable to engage in gainful activity since April of 1982; (3) his own statement that he continued to have seizures after the initial ruling by ALJ Cosentino on May 18, 1983.

On July 31, 1984, ALJ Lincoln denied Burnett's request to reopen the previous opinion of ALJ Cosentino finding "No new evidence material to the issues resolved in that decision has been submitted," but did find that Burnett was disabled as of November 13, 1983, but not prior to that date. In support of his conclusion that Burnett was not disabled before November 13, 1983, the ALJ (Lincoln) stated that Burnett's last seizure was in May of 1983, and although Burnett could not have performed the duties of his previous employment prior to November 13, 1983, "he could have been expected to engage in substantial gainful activity in ... [sedentary] jobs." The HHS Appeals Council affirmed ALJ Lincoln's decision.

The plaintiff brought this action seeking judicial review of the Secretary's denial of

---

* The Honorable James B. Parsons of the Northern District of Illinois is sitting by designation.

1. A grand mal seizure (also known as a tonic clonic seizure) is caused by abnormalities in the electric activity of the brain. The tonic phase of such seizures usually begins without warning and is marked by a sudden loss of consciousness, a loss of postural control, and a cry produced by a forced expiration caused by contrac-tion of the respiratory muscles. The tonic phase of the seizure usually lasts only 30 seconds at most and is followed immediately by the clonic phase which is marked by violent muscular contractions affecting the entire body. *See* Harrison's Principles of Internal Medicine, 11th ed., ch. 342, p. 1921–22.

2. Burnett did not appeal this decision to the federal district court.

his application for social security disability benefits from March 22, 1982, to November 13, 1983, in the United States District Court for the Central District of Illinois. Burnett sought review of ALJ Lincoln's determination (1) that ALJ Cosentino's decision should not be re-opened; and (2) that the plaintiff's disability began on November 13, 1983 rather than in May of 1983. The district court granted the Secretary's motion for summary affirmance of the Secretary's decision.

In response to the first issue, despite concluding that it did not have subject matter jurisdiction under § 405(g)[3] to review whether ALJ Lincoln improperly refused to reopen ALJ Cosentino's decision based on the new evidence submitted by Burnett, the district court ruled that it had jurisdiction based on the federal mandamus statute, 28 U.S.C. § 1361, "[t]o the extent Mr. Burnett alleges that the Secretary did not carry out [his] clear and plainly defined duty to plaintiff to consider his new evidence." *Burnett v. Heckler*, 625 F.Supp. 831, 838 (C.D. Ill.1986). The district court stated that:

> "mandamus is viewed as an extraordinary procedure that is available only where the following three elements are present: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available."

*Id.* at 836. After ruling on the jurisdictional question and reviewing the subject matter the district court held that the facts in this case did not warrant the issuance of a writ of mandamus finding ALJ Lincoln did carry out his duty to the plaintiff in considering Burnett's new evidence. The district judge stated:

> "Express statements contained in the ALJ's opinion make it clear that ALJ Lincoln considered plaintiff's new evi-

dence, but found that it did not justify re-opening the case. Such an indication is first present in the ALJ's statement that 'no new evidence *material* to the issues resolved in that decision (by ALJ Cosentino) has been submitted.' It is apparent from the statement that ALJ Lincoln *considered* the new evidence, but found it not to be material to the Secretary's first decision. The conclusion is supported by the fact that ALJ Lincoln's opinion does expressly consider and explain his rejection of Dr. Miller's report, which is one of the items of new evidence introduced by plaintiff. (R. 14). Finally, in making his determination that the Secretary's decision issued May 18, 1983, remains final and binding, ALJ Lincoln stated he considered the *entire* record. (R. 15). Thus, it is apparent that ALJ Lincoln did give consideration to plaintiff's 'new' evidence."

*Id.* at 838. The district court concluded that since the ALJ (Lincoln) made a determination that the new evidence did not provide a basis ("good cause") for reopening the earlier decision, the ruling of ALJ Cosentino was final and binding for the purposes of applying administrative *res judicata*.[4]

As to the second issue (the improper determination that Burnett's disability began on November 13, 1983 rather than on May 18, 1983) the district court concluded that there was "substantial evidence to support the ALJ's findings that Mr. Burnett was not disabled from May 18 to November 13, 1983." In addition, the trial judge determined that ALJ Lincoln's stated reasons for denying Burnett's claim for disability prior to November 1983 satisfied this court's requirement set forth in *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985) that "a minimal level of articulation of the ALJ's assessment of the evidence is

---

**3.** Section 405(g) provides, in relevant part, as follows:

"Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of

such decision or within such further time as the Secretary may allow."

**4.** The district court noted: "[w]ithout a determination that no basis for re-opening exists, the Secretary's decision is not 'final' for *res judicata* purposes, 20 C.F.R. § 404.957(c); *See Hennings v. Heckler*, 601 F.Supp. 919, 925–26 (N.D.Ill. 1985)."

required in cases in which considerable evidence is presented to counter the agency's position."

On appeal Burnett argues that ALJ Lincoln's determination that he was not disabled under 42 U.S.C. § 423(a) from May 18, 1983 to November 13, 1983, was not supported by substantial evidence in the record and further that he failed to comment on the evidence in the record that failed to be supportive of his decision. Secondly, the appellant contends that he is entitled to a writ of mandamus compelling the Secretary to consider the new evidence presented (a report from the Illinois Department of Rehabilitation Services, a report from Dr. Miller, his treating physician, and Burnett's claims and medical reports of continued seizures after the initial decision) for the re-opening of his claim for disability benefits for the period of from March 22, 1982 to May 18, 1983.

## II. *SUBSTANTIAL EVIDENCE*

Under 42 U.S.C. § 405(g), "The findings of the Secretary as to any fact, if supported by *substantial evidence,* shall be conclusive, and where a claim has been denied by the Secretary ... the court shall review only the question of conformity with such regulations and the validity of such regulations." (Emphasis added). The substantial evidence standard "[a]pplies to the district court's review of the Secretary's decision as well as this court's review of the district court's decision." *Imani v. Heckler,* 797 F.2d 508, 510 (7th Cir. 1986).[5] If the Secretary's findings are supported by substantial evidence in the record, "we must affirm unless there has been an error of law." *Waite v. Bowen,* 819 F.2d 1356, 1360 (7th Cir.1987).

Substantial evidence is "[r]elevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–217, 83 L.Ed. 126 (1938)); *see also Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). In reviewing the findings of the Secretary to determine if they are supported by substantial evidence "we may not decide the facts anew, reweigh the evidence, or substitute our own judgment for that of the Secretary." *Delgado v. Bowen,* 782 F.2d 79, 82 (7th Cir.1986).

We thus review whether there was substantial evidence in the record to support the Secretary's determination that since Burnett retained "the residual functional capacity for sedentary work" that he was not disabled [6] during the period from May 18, 1983, to November 13, 1983. The plaintiff argues there is very little evidence to support the ALJ's finding that he was not disabled prior to November 13, 1983, and that he has offered ample evidence (in the way of Doctor's reports, a report of the Illinois Department of Rehabilitation Services, and his own statements of his physical problems, continued seizures) adverse to Lincoln's decision—evidence that the ALJ does even refer to in his decision.

We have emphasized in our opinions that an "ALJ's decision in disability cases must be 'based on consideration of all relevant evidence and the reasons for his conclusions must be stated in a manner sufficient to permit an informed review.'" *Orlando v. Heckler,* 776 F.2d 209, 213 (7th Cir.1985) (quoting *Garfield v. Schweiker,* 732 F.2d

5. Since we review the Secretary's decision to determine whether or not it is supported by substantial evidence, we emphasize that "The decision of the district court is not subject to review under the 'clearly erroneous' standard of Fed.R.Civ.P. 52(a) because the findings of fact in question are those of the Secretary and not of the district court." *Johnson v. Heckler,* 741 F.2d 948 (7th Cir.1984).

6. The term disability as defined in 42 U.S.C. § 423(d)(1)(A) is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less that 12 months." A person is under a disability "only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy...." *Id.* at § 423(d)(2)(A).

605, 610 (7th Cir.1984)). In *Garfield* we stated:

"While it is often impracticable and fruitless for every document to be discussed separately, an administrative law judge may not select only the evidence that favors his ultimate conclusion. His written decision should contain, and his ultimate determination must be based upon, all of the relevant evidence in the record."

*Id.* at 609 (citations omitted). In *Orlando v. Heckler*, 776 F.2d 209 (7th Cir.1985), we stated "A written evaluation of every piece of testimony and submitted evidence is not required; however, the administrative law judge must articulate at some minimum level his analysis of the evidence in cases in which considerable evidence is presented to counter the agency's position [in order to facilitate and ensure meaningful appellate review]" (quoting *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir.1984)). *See also Look v. Heckler*, 775 F.2d 192, 195 (7th Cir.1985); *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir.1985); *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985); *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir.1985).

In determining that the appellant Burnett was not disabled prior to November 13, 1983, the ALJ (Lincoln) stated:

"Prior to November 13, 1983 ..., the record fails to establish that the claimant's impairment was quite so severe. When he was hospitalized in November he indicated his last seizure was in May. He had some weakness as the result of motor neurological deficits. Nevertheless, the record fails to establish that these conditions would have prevented him from performing at least sedentary work within the regulatory definition. The claimant's treating physician, Dr. Jon R. Miller, in a recent report, expressed the opinion that the claimant has been disabled since 1982. In explaining this opinion, the physician includes the statement that the claimant 'has never worked at a desk job or any sedentary work.' It is clear that the physician's opinion was taking into account certain factors outside the field of medicine; primarily, the impact of a lack of skills available for utilization in sedentary work. In promulgating the rules of Appendix 2 of Subpart P of the Regulations, however, the Secretary of Health and Human Services, in the course of rulemaking proceedings mandated by the Administrative Procedures Act, has established the existence of numerous unskilled sedentary jobs in the national economy. Despite the claimant's lack of skills or experience, such jobs would have been within his ability prior to last November 13. Consequently, although the claimant could not have performed the duties of his past relevant work prior to November 13, he could have been expected to engage in substantial gainful activity in other jobs. He can, therefore, not be found disabled before that date."

The ALJ denied the appellant benefits prior to November 13 based on the following reasoning: (1) Burnett had his last seizure in May of 1983; (2) although Burnett "had some weakness as the result of motor neurological deficits" he found nonetheless that he could perform sedentary work; and (3) Dr. Miller's report, stating that Burnett had been disabled since April 1982, took into account "certain factors outside the field of medicine."

As we noted earlier an ALJ is not required to evaluate every piece of testimony and submitted evidence; however, he "[m]ust articulate at some *minimum* level his analysis of the evidence in cases in which considerable evidence is presented to counter the agency's positions." *Orlando, supra.* In the instant case Burnett presented a significant amount of evidence to counter the agency's claim that he was not disabled from May 18, 1983 to November 13, 1983, including:

1. His own claims of continued seizures during the period from May 18, 1983 to November 13, 1983. In his application for disability benefits filed August 1, 1983, Burnett reported "hav[ing] seizures (uncontrollable)."

2. Notes made by Dr. Moris Senegor at the University of Chicago hospital on November 14, 1983 state that Burnett

told him that he "[h]as suffered from seizures which are increasing in duration of frequency recently . . ."

3. A letter written by Dr. Herman Dick, a physician (a neurologist) who examined Burnett on November 10, 1983, stating that according to Burnett, the appellant's:

"last seizure was two weeks ago. This consisted of his right arm and head jerking. When this occurs, he cannot feel the right arm and hand for awhile, during the seizure and afterwards. His last grand mal seizure with the accompanying loss of consciousness was in May. The focal motor seizure as described two weeks ago, tends to occur at least once every two weeks and has not been completely controlled."

Dr. Dick further stated in his report:

"Clinical impression: probable recurrence of a large, left intracranial meningioma, with residual evidence of a right hemiparesis. He has a partial seizure disorder with secondary generalization, secondary to the brain tumor. The partial seizures are currently incompletely controlled, occurring once every two weeks."

4. The report of the Illinois Department of Rehabilitation Services dated May 23, 1983 which stated:

"You are too severely disabled at this point in time to benefit from our services in terms of employability. Your disability would prevent you from being able to pursue vocational training or job placement services. You are aware that you may re-contact this agency to reopen your case if you start feeling better."

■ Except for the rather brief reference to a report written by Dr. Miller, the ALJ failed to make any reference to the evidence submitted by Burnett. Although much of Burnett's proffered evidence is based on his own claims of continued seizures, and the ALJ may have considered and rejected the evidence for sound reasons, the ALJ's failure to comment on the appellant's evidence leaves this court with a record insufficient for a meaningful appellate review. Our cases, *Orlando, Zblewski, Zalewski,* have established that to ensure meaningful appellate review at least a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which evidence is presented to counter the agency's position. The ALJ's failure to give such an assessment in the instant case necessitates we remand this case. In remanding we emphasize that "a written evaluation of every piece of testimony and submitted evidence is not required," but the ALJ must give some minimal assessment of Burnett's evidence.

## III. *WRIT OF MANDAMUS*

The appellant Burnett also argues that he is entitled to a writ of mandamus ordering that the Secretary consider the new evidence presented because the Secretary failed to consider the new evidence[7]

7. The relevant regulations under The Social Security Act provide as follows. Title 20, C.F.R. § 404.955 provides:

"The decision of the administrative law judge is binding on all parties to the hearing unless—

(c) The decision is revised by an administrative law judge or the Appeals Council under the procedures explained in § 404.987; . . ."

Title 20, C.F.R. § 404.987 provides:

"(a) *General.* Generally, if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review. However, a determination or a decision made in your case may be reopened and revised. After we reopen your case, we may revise the earlier determination or decision.

(b) *Procedure for reopening and revision.* You may ask that a determination or a decision to which you were a party be revised. The conditions under which we will reopen a previous determination or decision are explained in § 404.988."

Title 20, C.F.R. § 404.988 provides:

"A determination, revised determination, or decision may be re-opened—

(b) Within 4 years of the date of this notice of the initial determination if we find good cause, as defined in Section 404.989, to re-open the case . . ."

Title 20, C.F.R. § 404.989 states:

"(a) We will find that there is good cause to re-open a determination or decision if—

presented concerning the appellant's claim for disability benefits for the period March 22, 1982 to May 18, 1983.[8] Burnett's claim to have the ALJ consider the new evidence is essentially procedural in nature: he requests the issuance of a writ of mandamus to compel the ALJ to consider the new evidence. The mandamus statute, 28 U.S.C. § 1361, provides:

> "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

We must first address whether 42 U.S.C. § 405(h) precludes mandamus jurisdiction. Section 405(h) provides:

> "The findings and decision of the Secretary after hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter."

The Supreme Court on four occasions has reserved judgment as to whether mandamus jurisdiction is available for claims arising under the Social Security Act. *See Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 2022, 80 L.Ed.2d 622 (1984) ("Assuming without deciding that the third sentence of § 405(h) does not foreclose mandamus jurisdiction in all Social Security cases..."); *Califano v. Yamasaki,* 442 U.S. 682, 698, 99 S.Ct. 2545, 2556, 61 L.Ed.

2d 176 (1979) ("[W]e do not reach the question whether mandamus would otherwise be available [regarding the Social Security Act]"); *Mathews v. Eldridge,* 424 U.S. 319, 332 n. 12, 96 S.Ct. 893, 901 n. 12, 47 L.Ed.2d 18 (1976) ("Given our conclusion that jurisdiction in the District Court was proper under § 405(g), we find it unnecessary to consider Eldridge's contention that notwithstanding § 405(h) there was jurisdiction over his claim under the mandamus statute ..."); *Norton v. Mathews,* 427 U.S. 524, 528–33, 96 S.Ct. 2771, 2774–76, 49 L.Ed.2d 672 (1976) (choosing not to resolve jurisdictional issue involving § 405(h) and 28 U.S.C. § 1361). While this court has not specifically considered the issue,[9] other circuits have held that the mandamus statute provides jurisdiction in cases challenging the procedures used in administering Social Security benefits but unrelated to the merits. *See Ganem v. Heckler,* 746 F.2d 844, 850–52 (D.C.Cir.1984); *Lopez v. Heckler,* 725 F.2d 1489, 1507–08 (9th Cir.), *vacated and remanded on other grounds,* 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984); *Belles v. Schweiker,* 720 F.2d 509, 511–13 (8th Cir.1983); *Kuehner v. Schweiker,* 717 F.2d 813, 819 (3d Cir.1983); *Starnes v. Schweiker,* 715 F.2d 134, 141–42 (4th Cir. 1983), *vacated on other grounds sub nom. Starnes v. Heckler,* 467 U.S. 1223, 104 S.Ct. 2673, 81 L.Ed.2d 870 (1984); *Ellis v. Blum,* 643 F.2d 68 (2d Cir.1981); *Martinez v. Richardson,* 472 F.2d 1121, 1125–26 (10th Cir.1973). In *Ganem,* the D.C.Circuit held that § 405(h) does not preclude the exercise of mandamus jurisdiction since "The fact that Congress knows how to withdraw a particular remedy and has not expressly done so is some indication of congressional intent to preserve that reme-

---

> "(1) New and material evidence is furnished ..."

**8.** As noted earlier this new evidence involved: (1) the Illinois Department of Rehabilitation Services' report; (2) Dr. Miller's report in which he gives his opinion that the appellant could not work since his first grand mal seizure on March 22, 1982; and (3) evidence of seizures.

**9.** In *Attorney Registration and Disciplinary Commission of Supreme Court of Illinois v. Schweik-*

*er,* 715 F.2d 282 (7th Cir.1983) we intimated that mandamus jurisdiction might be available to Social Security claimants despite § 405(h): "[t]here is a powerful argument that the mandamus statute remains available to social security claimants notwithstanding section 205(h) [42 U.S.C. § 405(h) ] see, e.g., *Ellis v. Blum, supra,* 643 F.2d at 78–82; *Soberal-Perez v. Schweiker,* 549 F.Supp. 1164, 1167–70 (E.D.N.Y.1982)." *Id.* at 290.

dy." 746 F.2d at 852.[10] The Ninth Circuit in *Lopez* stated that:

"We have held ... that mandamus jurisdiction is available in cases challenging the procedures used in administering social security benefits. *See Ringer v. Schweiker*, 697 F.2d 1291 (9th Cir.1982), *cert. granted sub nom. Heckler v. Ringer*, 463 U.S. 1206, 103 S.Ct. 3535, 77 L.Ed.2d 1386 (1983); *Daniel H. Freeman Memorial Hospital v. Schweiker*, 656 F.2d 473 (9th Cir.1981); *Knuckles v. Weinberger*, 511 F.2d 1221 (9th Cir.1975). In this regard, we are in accord with other circuits that have considered the question. *See Ellis v. Blum*, 643 F.2d 68 (2d Cir.1981); *Martinez v. Richardson*, 472 F.2d 1121 (10th Cir.1973). Our holding is also supported not only by the plain language of section 405(g), but also by Congress's failure, in amending other jurisdictional provisions, to express disapproval of the cases finding mandamus jurisdiction available under such circumstances. *See Ellis v. Blum*, 643 F.2d at 80."

725 F.2d at 1507. In *Belles v. Schweiker*, 720 F.2d at 512, the Eighth Circuit concluded: "[t]hat in cases like the present one which involve claims essentially procedural in nature, § 405(h) presents no obstacle to mandamus jurisdiction." 720 F.2d at 512. The Second Circuit held that § 405(h) "[d]oes not preclude assertion of § 1361 jurisdiction over claims essentially procedural in nature." *Ellis*, 643 F.2d at 82. The Second Circuit emphasized that Congress had an opportunity in 1976 when it amended 28 U.S.C. § 1331, (to abolish the jurisdictional amount in § 1331 suits against federal officers) to disapprove of pre–1976 cases employing mandamus jurisdiction to review federal administrative action but failed to do so.

■ We agree with those circuits that have concluded that Congress's failure to express disapproval of the use of mandamus jurisdiction in Social Security cases when it amended other jurisdictional provisions is evidence that Congress intended to preserve mandamus jurisdiction for claims that are procedural in nature under the Social Security Act. In addition, the Secretary has not offered nor have we been able to discover any evidence that Congress intended to limit mandamus jurisdiction with Section 405(h). We agree with the reasoning of the other circuits that have considered this question and hold that § 405(h) does not bar mandamus jurisdiction over procedural claims under the Social Security Act.

■ We are convinced the district court made the proper distinction as to when mandamus jurisdiction allows review on a claim such as Burnett's:

"[S]o long as the ALJ *considered* the new evidence, as he is required to do under the regulations, his decision to not re-open the case for good cause involves the merits of plaintiff's claim for benefits and is thus unreviewable under mandamus jurisdiction. On the other hand, to the extent plaintiff alleges that the ALJ did not even consider whether the new evidence constitutes 'good cause' to re-open the case, plaintiff states a claim for relief under the mandamus statute. In that situation, plaintiff would be suing the Secretary to compel her to perform a peremptory duty that is clearly owed to the plaintiff."

*Burnett v. Heckler*, 625 F.Supp. at 838. Since Burnett's argument is that the Secretary failed to carry out his clear and plainly defined duty to consider his new evidence, 20 C.F.R. § 404.957 *et seq.*, and does not involve the merits of plaintiff's claim for benefits, this is an appropriate case for the exercise of mandamus jurisdiction. We note in so holding that we join with those circuits who have held that § 405(h) of the Social Security Act does not preclude mandamus jurisdiction over claims procedural in nature.

A writ of mandamus "[i]s intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief

---

**10.** The D.C. Circuit also stated "there is nothing to indicate that Congress intended to abolish the historic common law power of federal courts in the District [of Columbia] to issue writs of mandamus to federal officials ..." 746 F.2d at 851.

and only if the defendant owes him a clear non-discretionary duty." *Heckler v. Ringer,* 104 S.Ct. at 2022. In the instant case the defendant Secretary does not argue that Burnett failed to exhaust his administrative remedies on this issue. In his decision of July 31, 1984, ALJ Lincoln denied the plaintiff's request to have the prior decision of May 18, 1983, re-opened stating: "No new evidence material to the issues resolved in that decision has been submitted. Accordingly that decision remains final and binding." The Appeals Council shortly thereafter affirmed ALJ Lincoln's decision not to re-open the earlier decision; thus, it is a final decision of the Secretary.

In *Americana Healthcare Corp. v. Schweiker,* 688 F.2d 1072, 1084 (7th Cir. 1982), *cert. denied,* 459 U.S. 1202, 103 S.Ct. 1187, 75 L.Ed.2d 434 (1983) we stated that a writ of mandamus is only available:

> "under exceptional circumstances of clear illegality when the performance of official duty calls for a construction of governing law, the [federal] officer's interpretation will not be disturbed by a writ of mandamus unless it is clearly wrong and his official action is arbitrary and capricious." *Id.* at 1084.

It is well-established in this circuit that a writ of mandamus may issue when the following three elements are present:

> " '(1) a clear right in the plaintiff to the relief sought;
>
> (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question;
>
> (3) no other adequate remedy available.' "

*Homewood Professional Care Center, Ltd. v. Heckler,* 764 F.2d 1242, 1251 (7th Cir.1985) (quoting *Americana Healthcare,* 688 F.2d at 1084). In addition to these elements, Burnett's claim must be procedural and unrelated to the merits of a claim for benefits. *See Dietsch v. Schweiker,* 700 F.2d 865, 868 (7th Cir.1983). Because Burnett alleges that ALJ Lincoln did not even consider whether the new evidence constituted good cause for re-opening the decision, 20 C.F.R. § 404.989(a)(1), his argument is procedural in nature and unrelated

to the merits of his claim for benefits for the period prior to May 18.

The first factor necessary to support the issuance of a writ of mandamus is "a clear right in the plaintiff to the relief sought." It is not disputed that Burnett complied with the four-year time limitation in § 404.988(b). *See* Footnote 7 *supra.* Thus, he does have a "clear right" to have the ALJ consider whether he has established "good cause" with his new evidence to have the May 18, 1983, decision re-opened.

The next question that must be dealt with before issuing a writ of mandamus is whether the Secretary has a "plainly defined and peremptory duty to do the act in question." The Secretary concedes in his brief that "The only non-discretionary duty owed to Mr. Burnett was to consider the [new] evidence." The Secretary argues, however, "that duty was discharged by the Secretary."

The district judge found that the ALJ (Lincoln) did consider the new evidence offered by Burnett:

> "It is the finding of this Court, however, that it is unnecessary to remand this case to the Secretary to decide whether plaintiff has shown 'good cause' to reopen her first decision, because in this case ALJ Lincoln did fulfill his duty to consider plaintiff's new evidence. Express statements contained in the ALJ's opinion make it clear the ALJ Lincoln considered plaintiff's new evidence, but found that it did not justify reopening the case. Such an indication is first present in the ALJ's statement that 'no new evidence *material* to the issues resolved in that decision (by ALJ Cosentino) has been submitted.' It is apparent from this statement that ALJ Lincoln *considered* the new evidence, but found it not to be material to the Secretary's first decision. This conclusion is supported by the fact that ALJ Lincoln's opinion does expressly consider and explain his rejection of Dr. Miller's report, which is one of the items of new evidence introduced by plaintiff. (R. 14). Finally, in making his determination that the Sec-

retary's decision issued May 18, 1983, remains final and binding, ALJ Lincoln stated he considered the *entire* record. (R. 15). Thus, it is apparent that ALJ Lincoln did give consideration to plaintiff's new evidence."

625 F.Supp. at 838–39 (emphasis in original). The trial judge concluded that "because the ALJ fulfilled his duty to at least consider the new evidence, this is not a proper case for remand under the federal mandamus statute." *Id.* at 839.

As the trial court noted, the ALJ did consider Dr. Miller's report. ALJ Lincoln in his ruling stated:

"The claimant's treating physician, Dr. Jon R. Miller, in a recent report, expressed the opinion that the claimant has been disabled since 1982. In explaining this opinion, the physician includes the statement that the claimant 'has never worked at a desk job or any sedentary work.' It is clear that the physician's opinion was taking into account certain factors outside the field of medicine; primarily, the impact of a lack of skills available for utilization in sedentary work."

We emphasize, however, that the ALJ's discussion of Dr. Miller's report was not in the context of reopening the earlier ruling; it was only analyzed in terms of whether Burnett was disabled after May 18, 1983.

What is most troubling about the ALJ's opinion is his failure to analyze the May 23, 1983, report from the Illinois Department of Rehabilitation Services which stated:

"The Department of Rehabilitation Services is closing your case because: you are too severely disabled at this point in time to benefit from our services in terms of employability. Your disability would prevent you from being able to pursue vocational training or job placement services."

Since this report came out only five days after ALJ Cosentino gave his ruling on May 18, 1983, and advises Burnett that he is too disabled to work, it is relevant to whether the initial decision should have been re-opened. We note the ALJ (Lincoln) also failed to comment on Burnett's statement that his seizures were continuing.

Title 20, C.F.R. § 404.987 *et seq.* entitles a social security claimant to have a prior determination re-opened if he or she furnishes "new and material evidence...." In the instant case Burnett submitted evidence not previously evaluated; the Secretary concedes in his brief that the appellant had a right to have the evidence considered by the ALJ, but argues the ALJ did consider it. From the record we have before us, it is unclear whether the ALJ gave full consideration to the new evidence submitted by the appellant since he failed to discuss any of the new evidence in terms of re-opening ALJ Cosentino's prior decision. The ALJ does state (1) "No new evidence material to the issues resolved in that decision has been submitted" and (2) that he "has carefully considered all the documents identified in the record as exhibits, the testimony at the hearing and arguments presented" and that he has given "careful consideration of the entire records." These conclusory statements, of themselves, *do not establish that the ALJ gave consideration to the new evidence. Without something more than these conclusions, it is impossible for a reviewing court to engage in meaningful appellate review.* We hold that it is at very best unclear whether the ALJ performed his duty to consider the new evidence as required by the Social Security Administration's regulations. Burnett has thus met the second requirement for a writ of mandamus that there is "a plainly defined and peremptory duty on the part of the defendant to do the act in question." *Homewood,* 764 F.2d at 1251.

Regarding the third factor required for the issuance of a writ of mandamus, that the plaintiff have "no other adequate remedy available," *Id.,* since Burnett has pursued all of his possible appeals within the Social Security Administration of ALJ Lincoln's decision, a writ of mandamus is his only available remedy. He has thus satisfied the third element necessary for a writ of mandamus to be issued that he have "no other adequate remedy available." *Id.*

As our analysis has demonstrated, the district court improperly concluded that Burnett did not satisfy the required three elements for the issuance of a writ of man-

damus. The Secretary concedes, and we emphasize, that the regulations require that the ALJ consider the evidence Burnett presented concerning his disability during the period of May 22, 1982, to May 18, 1983. At best it is unclear whether the ALJ fulfilled this duty. We therefore remand this case to the district court for proceedings consistent with this opinion.

IV. CONCLUSION

We hold that since ALJ Lincoln failed to offer even a minimal articulation as to his assessment and weighing of the evidence regarding the period May 18 to November 13, 1983 and Burnett presented considerable evidence to counter the agency's position there is an insufficient record for a meaningful appellate review; thus, it is necessary that the judgment of the district court be reversed and the case be remanded to the district court for further proceedings consistent with this opinion. We also hold that because it is unclear whether the ALJ considered the new evidence presented by Burnett in his attempt to have the original decision re-opened pursuant to 20 C.F.R. §§ 404.987, 404.989, that the district court, upon remand, must reconsider its refusal to issue a writ of mandamus. Reversed and remanded.