**Ella M. CUSHMAN, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**Civ. No. L 87–47.**

United States District Court, N.D. Indiana, Hammond Division.

April 14, 1988.

Bill D. Woodard, Danville, Ill., for plaintiff.

Christina McKee, Asst. U.S. Atty., Fort Wayne, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

This case is brought pursuant to section § 205(g) of the Social Security Act, 42 U.S.

C. § 405(g), for judicial review of the Secretary's final decision denying the plaintiff's application for Social Security Disability Benefits under Title II, Section 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416 and 423. The matter comes before the court by way of the Appeals Council's own motion review, provided by 20 C.F.R. §§ 404.969–404.983.

Pursuant to 20 C.F.R. § 404.969, within 60 days after the date of a hearing decision or dismissal, the Appeals Council may decide to review the action taken and must notify all parties of the review by mail. Such a review will be undertaken where the Council finds abuse of discretion by the ALJ, error of law, lack of substantial evidence to support findings and conclusions, or broad policy or procedural concerns which may affect the public interest. 20 C.F.R. § 404.970(a)(1)–(4).

The authority of the Appeals Council to initiate this type of review *for any reason,* has been discussed and confirmed by the courts of this circuit. See *Bauzo v. Bowen,* 803 F.2d 917 (7th Cir.1986); *Nesvold v. Bowen,* 683 F.Supp. 1246 (N.D.Ind. 1988). The Appeals Council is not limited to the situations described at 20 C.F.R. § 404.970(a)(1)–(4). *Bauzo* at 921. It is the decision of the Appeals Council, not that of the ALJ, that is the final decision of the Secretary subject to the review of this court. *Id.* Nevertheless, the court does examine the record as a whole to determine if the decision of the Council is based on substantial evidence. *Id.* See also, *Ray v. Bowen,* 843 F.2d 998 (7th Cir.1988).

Although the findings of the ALJ will not be considered binding on the Appeals Council, they should not be ignored. *Bauzo* at 922. The conflicting findings are part of what the court will consider in its determination of whether the Council's decision is supported by substantial evidence. *Id.;* See also *Universal Camera v. NLRB,* 340 U.S. 474, 496, 71 S.Ct. 456, 468–69, 95 L.Ed. 456 (1951).

With respect to the credibility findings of the ALJ, there is no question that where there is substantial evidence for doing so,

the Council is within its authority to reject such findings. See, *Parker v. Bowen*, 788 F.2d 1512, 1521 (11th Cir.1986); *Beavers v. Sec.*, 577 F.2d 383, 386–87 (6th Cir.1978). See also, *Bauzo* at 922; *Nesvold v. Bowen*, 683 F.Supp. 1246, (N.D.Ind.1988). However, deference to the trier of fact's determination as to credibility is deeply imbedded in our legal system, and related findings should not be overlooked or taken lightly. *Nesvold v. Bowen*, 683 F.Supp. 1246 (N.D.Ind.1988), and cases cited therein. When the Appeals Council rejects an ALJ's credibility finding, it should do so expressly so as to allow for a substantial evidence review. *Bauzo* at 922.

In *Bauzo*, the Court of Appeals for the Seventh Circuit provided a comprehensive review of law pertaining to substantial evidence, indicating that similar standards apply in reviewing the final decision of the Secretary, whether it happens to be an Appeals Council's decision, or that of an ALJ. *Bauzo* at 923.

The Social Security Act provides that "the findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (1983); *Walker v. Bowen*, 834 F.2d 635, 639 (7th Cir.1987); *Burnett v. Bowen*, 830 F.2d 731, 734 (7th Cir.1987). The question presented for review is not whether the claimant is disabled, but rather whether the ALJ's finding of non-disability is supported by substantial evidence in the record. *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987). This court does not decide the facts anew, reweigh evidence, or substitute its own judgment for that of the Council. *Meredith v. Bowen*, 833 F.2d 650, 653 (7th Cir.1987); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir.1984).

Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Sears v. Bowen*, 840 F.2d 394 (7th Cir.1988); *Bauzo v. Bowen*, 803 F.2d 917, 912 (7th Cir.1986). A search for substantial evidence must take into account "whatever in the record fairly detracts from its weight." *Sears v. Bowen*, 840 F.2d 394 (7th Cir.1988), quoting *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir.1986). Although substantial evidence means more than a mere scintilla, *Richardson* at 401, 91 S.Ct. at 1427, it is "something less than the weight of the evidence." *Delgado v. Bowen*, 782 F.2d 79 (7th Cir.1986), quoting *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966). Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, it is for the Secretary or the Secretary's designate, to resolve the conflict. *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir.1987); *Delgado v. Bowen*, 782 F.2d 79, 82–83 (7th Cir.1986); *Stephens v. Heckler*, 766 F.2d 284, 287–88 (7th Cir.1985).

Procedurally the court considers this case on cross-motions for summary judgment, each supported by a memorandum. All essential questions having been fully briefed by the parties, the matter is ripe for a decision.

## II.

The plaintiff, Ella Cushman, was born on October 10, 1942, and was, at the time of her hearing on December 16, 1985, forty-three years of age. She is five feet, two inches tall and weighs about 120 pounds. Mrs. Cushman completed high school and formerly worked as a secretary for a brief period and in clerking positions prior to that. She has had no additional vocational training. She was diagnosed as having asthma when she was twenty-six years old.

The plaintiff first applied for disability benefits in March of 1983, alleging a disability onset date of October 11, 1982. That application was denied initially and on reconsideration. Mrs. Cushman did not seek judicial review of the earlier denial. On November 26, 1984, she reapplied for benefits, again alleging a disability onset date of October 11, 1982. Upon two denials the plaintiff requested a hearing which was held before Administrative Law Judge (ALJ) Delbert Remington. The ALJ grant-

ed benefits, but with an onset date of December 1, 1983. The date of this decision was June 27, 1986. Upon proper notification the Appeals Council reversed the decision of the ALJ on February 25, 1987.

Essentially the Council found the plaintiff capable of performing past relevant work as a secretary, despite severe chronic obstructive lung disease. The Council specifically rejected the plaintiff's subjective complaints of dyspnea, shortness of breath and wheezing, as out of proportion to clinical findings and therefore, not credible. Further, the Council rejected findings by treating physicians that the plaintiff has non-exertional and environmental limitations impacting on her ability to work. The Council found the plaintiff exertionally capable of medium work except for lifting more than 50 pounds with frequent lifting of 25 pounds and an absence of non-exertional limitations.

To so conclude, the Council appeared to rely very heavily on the one-page report of a member of its medical staff, who based conclusions exclusively on a review of an incomplete record. The Council also relied on selected portions of selected reports which omitted evidence favorable to the plaintiff's position. The Secretary's final decision was based on a rejection of the medical interpretations of at least two treating physicians, one of whom specialized in pulmonary diseases, as well as a rejection of the ALJ's implicit acceptance of the plaintiff's credibility. This court's task is to determine if substantial evidence and the law will support the action of the Appeals Council.

In determining whether or not a claimant is disabled, the Secretary has adopted a five-step sequential evaluation process, which has been summarized as the following inquiry: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work in the national economy? An affirmative answer leads either to the next step, or on steps (3) and (5) to a finding that the claimant is disabled. A negative answer at any point other than at step (3) will lead to a finding that the claimant is not disabled. See, 20 C.F.R. § 404.1520; *Veal v. Bowen,* 833 F.2d 693, 695 n. 2 (7th Cir.1987). With respect to that part of the ALJ's determination considering the ability to perform past work, the burden of proof is on the claimant. *Sears v. Bowen,* 840 F.2d 394 (7th Cir.1988).

The case was decided at level four, and it would appear that the Council considered the plaintiff's condition to be "severe" at step two. In Finding Three, the council stated that "[t]he claimant has the following *severe* impairment: chronic obstructive lung disease...." An inconsistent position was advocated in the narrative portion of the Council's decision where, agreeing with the opinion of its medical staff member, the Council concluded that "the claimant's pulmonary impairment represented only a *mild* degree of chronic obstructive lung disease which would not preclude medium level work activity."

It is clear from the record and agreed by the Council and the ALJ that the plaintiff's impairments do not meet or equal one of the listed impairments. A central issue in this case is whether the plaintiff sustained her burden of showing that she could not perform prior relevant work. While the ALJ concluded that Mrs. Cushman's non-exertional restrictions would prevent her from performing any of her past relevant work, the Appeals Council found complaints of dyspnea (painful breathing), shortness of breath, and wheezing to be out of proportion to clinical findings and therefore not credible. The Council found a complete absence of non-exertional limitations. If indeed the plaintiff sustained her burden, the burden of production shifted to the Secretary to show that there are jobs existing in the national economy that the plaintiff is capable of performing on a sustained basis.

### III.

In evaluating the evidence, the Appeals Council's decision noted medical evidence

which revealed a long history of treatment for bronchial asthma. The decision particularly mentioned a report dated February 8, 1984, submitted by Dr. Robert Sostheim, the plaintiff's treating physician. The Council summarized this report as indicating that despite doctor appointments about every two or three months, Mrs. Cushman had not recently required hospitalization, and that spirometry tests of June 21, 1983, had showed a forced vital capacity of 75% of normal.

Although the decision did not so reflect, this report also described the plaintiff's symptoms as "constant", as opposed to "intermittent", and noted a variety of medications as having prevented hospitalization, which consisted of:

> ... 10 mg. of Prednisone every other day, 2 sprays of Albuterol, and 2 sprays of Vanceril four times a day, 2 milligrams of Albuterol by mouth four times a day, and 200 mg. of Slo–Phyllin four times a day.

Dr. Sostheim further indicated that recently, intravenous drug therapy and hospitalization had not been necessary, although when the asthma becomes worse, steroids must be increased. He reported the plaintiff as having experienced difficulty when she was working because of going from her car to work, despite obtaining permission to park her car very close to her place of employment. Dr. Sostheim cited a peak flow of 295 on October 31, 1983. Although her forced vital capacity was 75% of normal, a 1–second vital capacity was 72% and the FEF 25 to 75 was 50% of normal. He opined that Mrs. Cushman was unable to work productively due to chronic shortness of breath and fatigue.

The Council also referred to a report of September 22, 1984, which "indicated the claimant had wheezes and distant breath sounds, but ... noted she had no difficulty in sitting or standing." It was also noted that:

> ... a pulmonary function study attached to this report showed an FEV–1 of 1.80 prebronchodilator, but there was no report of the post-bronchodilator results. On February 5, 1985, a chest x-ray was

negative and showed clear lung fields. Pulmonary study showed an FEV–1 of 1.7 and MVV of 38.

Beyond the summary of the Appeals Council, the same report detailed a diagnosis of bronchial asthma, moderately severe, with good prognosis as to life, but of a chronic, long-standing nature that could not be expected to go away. Dr. Sostheim referred to daily, constant shortness of breath due to compromised pulmonary function. He described the plaintiff as "quite limited regarding how active she can be because even moderate exertion causes shortness of breath." He reiterated that the symptoms are constant and continuous rather than episodic, involving a need to use eight or more inhalants in the course of a day with side effects of mild puffiness and weight gain. Dr. Sostheim reported a spirometry as showing a forced vital capacity of 2.71 1., a 1–second vital capacity of 1.80 1., and an FEF 25–75% of 1.13 1/sec. The plaintiff's peak flow on September 4th was 280, with after inhalation flow reported from home at 350. Peak flow in June was 320 and in March was 290 in the doctor's office.

A September 27, 1985, report was reviewed in the Council's decision as indicating that Mrs. Cushman's functional limitations were primarily related to exertion and fatigue, that a chest x-ray was normal and showed clear lungs, and that the plaintiff had been relatively stable since 1983 with only about two respiratory infections per year.

This September 27th report was submitted by Dr. Garland Byron, a treating physician specializing in pulmonary disease and internal medicine. Dr. Garland had treated Mrs. Cushman since 1983. In addition to the Council's cursory summary of his report, he indicated that at the time of the report in 1985, the plaintiff still had "fatigue and shortness of breath most of the time, especially with mild exertion such as walking one block or climbing a flight of stairs." He described her as having a capacity for intermittently carrying groceries from her car, for housework interspersed with extended periods of rest, and for light

gardening. Dr. Garland reported that the plaintiff becomes incapacitated with respiratory infections twice a week for two-week periods, but has not had to be hospitalized.

Dr. Byron opined that functional limitations related to exertion and fatigue

... would severely impair and disable her in working around an office, even for relatively sedentary work, over the period of an 8–hour day....

As far as restrictions related to the work environment, she would be definitely at risk if she was working in any areas where she had to be exposed to dust, fumes, heat or cold.

... [A]t this point I would still regard Mrs. Cushman as being disabled, primarily because of the severity of her shortness of breath ... it is possible that ... she might even come to the point where she would not be disabled. At this point, however, I feel that she is still unable, primarily because of her dyspnea on exertion and fatigue as a result of her asthma, to be unable to work on either a full-time or part-time basis.

In reviewing the case, the Appeals Council stated that it considered the entire record before the ALJ including the testimony at the hearing. In reaching its decision the Council relied greatly on a medical analysis dated August 15, 1986, by Dr. Thomas O'Connor, an internist on the medical staff who specialized also in pulmonary diseases. The O'Connor analysis consisted of a one-page report based exclusively on a review of the record. The report contained the following summary:

The clinical record contains no record of asthmatic bronchitis requiring frequent emergency room treatment or hospitalization for same. The claimant certainly has only a mild degree of chronic obstructive lung disease as manifested by the ventilatory studies of Exhibit B–39. The claimant does not, in any way, meet or equal the requirements of the Listings under 3.02 or 3.03 and requires no further medical development. The claimant has the residual functional capacity for sustained medium work activity without any environmental restrictions. This means that the claimant can lift up to 50 pounds occasionally and 20 to 25 pounds frequently, can sit at a job 8 hours a day, walk or stand 7 to 8.

The Council also considered: a medical report dated September 3, 1986, by Dr. Sostheim; a report dated July 1, 1977 by Dr. Harry Fein, documenting an endoscopy performed in 1971 and diagnosing the plaintiff's condition as asthmatic and tracheo-bronchitis to be treated with bacterial vaccine desensitization antihistamines and steroids; an emergency room record from Lakeview Medical Center dated August 28, 1978, which, although in large part illegible, appears to document an admission; and a letter dated December 16, 1986, from the plaintiff's attorney. Although these latter exhibits, with the exception of Dr. Sostheim's contribution, were not necessarily of great import, the court notes that they were not part of the record which was reviewed by Dr. O'Connor.

The opinion of Dr. Sostheim dated September 3, 1986, indicated that,

[w]hile Mrs. Cushman is able to function reasonably well when her peak flow is close to 300 and, at this level, she probably could function in a sedentary occupation, she does have reactive airways so that with adverse stimuli her peak flow goes down considerably.

Dr. Sostheim further stated that he had seen the plaintiff when she had a peak flow of 140, which rose to 330 after medication including her bronchodilator. He opined that at work Mrs. Cushman was bothered by fatigue, exposure to irritants such as smoking and cold weather. He indicated that ... having to walk in the cold air with wind, gave her considerable respiratory impairment, which would last for a fairly prolonged period of time so that she could not function in her job. Finally, Dr. Sostheim reported that since the plaintiff has not been employed she has been able to control her environment, avoiding irritants to a point that her peak flow has been much more stable, typically around 300 with continuation of maximal bronchodilator therapy and steroids every other day.

Dr. Sostheim concluded that Mrs. Cushman would have difficulty doing work on an ongoing basis due to chronic dyspnea. Although sedentary work might be feasible for short to moderate periods of time, the doctor felt that fatigue and chronic respiratory problems would result in an inability to be productive. The report also referred again to the problem of being outdoors to get from the car to work and back to the car.

The Appeals Council dismissed a February 5, 1985, report by Dr. R.J. Reynolds, a specialist in internal medicine and cardiovascular disease, with the comment that the chest x-ray was negative and showed clear lung fields, and that pulmonary study showed an FEV-1 of 1.7 and MVV of 38. That test showed a pre-bronchodilator FEV-1 of 1200, or 45% of normal, and an MVV of 47 or 59%. The post-bronchodilator results were as reported by the Council, at an FEV-1 of 1700, or 65% of normal, and an MVV of 38 or 48%. The court notes that it has been held in this circuit that an FEV-1 of 51%, with an MVV of 85% and a vital capacity of 84% was insufficient evidence upon which to terminate benefits on the basis of improvement. *Switzer v. Heckler*, 742 F.2d 382, 384 (7th Cir.1984).

### IV.

■ There are a number of problems with the Appeals Council's treatment of Mrs. Cushman's case. To begin with, the law will not support the Secretary's preference for the opinion of Dr. O'Connor over the opinions of treating physicians, particularly those of Drs. Sostheim and Garland. Although the opinion of treating physicians will not necessarily control the final decision of the Secretary, there are guidelines from the case law of this circuit that relate to preferring the opinion of a non-examining, non-treating physician.

*Garrison v. Heckler*, 765 F.2d 710 (7th Cir.1985), established several principles of law that are particularly relevant here, because that case involved a pulmonary function problem, which did not meet the Listing. The court held that the physical capacities assessments of non-examining agency physicians might be substantial evidence when they bring something of value to the decision such as greater expertise, greater impartiality or a greater range of experience in comparing a particular case to a standard or rule of decision. In that case the treating physicians supplied no opinion as to what the claimant could or could not do. The conditions upon which *Garrison* was decided do not appear to be present here. The Appeals Council did not even attempt to articulate justification for preferring the conclusions of Dr. O'Connor, nor does this court readily find any. In this respect the Council's decision did not meet even the minimal requirements of *Fox v. Heckler*, 776 F.2d 738 (7th Cir.1985) and *Stephens v. Heckler*, 766 F.2d 284 (7th Cir.1985). For more recent review of expected articulation see *Ray v. Bowen*, 843 F.2d 998 (7th Cir.1988), and *Burnett v. Bowen*, 830 F.2d 731 (7th Cir.1987).

Here, the Appeals Council rejected both the plaintiff's testimony and the opinions of her treating physicians as lacking in support from the medical evidence. In fact, the record is full of spirometric tests which the plaintiff's doctors have interpreted as supportive of her claims. The decision of the Appeals Council failed to articulate any reason for preferring Dr. O'Connor's interpretation of the medical evidence over the interpretations of the treating physicians.

Nothing in this record suggests a bias on the part of Drs. Sostheim and Garland, nor has the Appeals Council so suggested. See *Whitney v. Schweiker*, 695 F.2d 784, 789 (7th Cir.1982); *Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir.1982). Moreover, neither a bias nor a lack of it should be presumed of Dr. O'Connor. Indeed, considering the content of his report in the context of the record as a whole, the court cannot avoid some doubts as to Dr. O'Connor's objectivity.

Solely from a review of the record, Dr. O'Connor concluded that the plaintiff "certainly has only a mild degree of chronic obstructive lung disease," with an RFC for sustained medium work activity, and without any non-exertional restrictions. To so conclude the doctor had to ignore, overlook,

or reject the greater part of this record. Even the Appeals Council found the plaintiff's condition to be severe, although it somewhat inconsistently agreed with Dr. O'Connor's description of a mild condition.

Dr. O'Connor also found a capacity for lifting up to 50 pounds occasionally and 20 to 25 pounds frequently, and for sitting at a job 8 hours a day, and walking or standing for seven to eight hours. Neither the doctor nor the Appeals Council pointed to any evidence supporting such a conclusion, nor to a reason for rejecting contrary conclusions of the plaintiff's treating physician as well as that of the ALJ, all of whom had the opportunity to observe the plaintiff and examine her face-to-face.

Finally, Dr. O'Connor's finding of an absence of non-exertional restrictions is totally contrary to the evidence of record, which is fairly uniform on this point. In addition to the agreement of treating physicians and the ALJ with respect to the plaintiff's non-exertional restrictions, the agency's non-examining consultants found that the plaintiff must work in an environment free of temperature extremes, dust, fumes and known allergies.

As a final matter, Dr. O'Connor's input cannot be preferred on the basis of his expertise. While he is a specialist in internal medicine and pulmonary diseases, so is Dr. Garland, whose opinion is based on long-term treatment of the plaintiff and a series of spirometric tests. His opinions are also supported by the conclusions of Dr. Sostheim.

## V.

■ Having carefully reviewed this record, the court finds that the plaintiff has presented evidence sufficient to sustain her burden of showing an incapacity to return to prior relevant work, due to fatigue, dyspnea, and environmental exacerbations. The Council failed to articulate a counter position supported by substantial evidence and law. The Appeals Council rejected the plaintiff's limitations pointing to her statement that she had suffered no acute attacks in six years. Although that is true, it is also apparent from Mrs. Cushman's testimony and the reports of her doctors, that such results were possible only because she had not been working since 1982, and because she is dependent upon heavy medication which, while helping her condition, when coupled with her difficulty in breathing, causes her to require rest periods during the day. As previously noted, the record shows additional problems in prior work due to environmental conditions.

To conclude that the plaintiff could return to prior work, the Appeals Council had to ignore or reject relevant evidence. It failed to adequately articulate a basis for doing so, and further failed to present substantial evidence for its reversal decision. For a thorough and very recent review of the Secretary's obligation, see *Ray v. Bowen,* 843 F.2d 998, 1002 (7th Cir.1988). In *Ray,* the Court of Appeals for the Seventh Circuit reversed and remanded the decision of the Appeals Council for failure to comment on its assessment of certain material evidence presented.

Relative to the plaintiff's ability to return to prior work, Dr. Byron opined on June 7, 1983, that Mrs. Cushman could function as a secretary for a five to six-hour day, or an eight-hour day with rest periods of one to two hours in the middle. She also would be expected to miss work two to three days as often as every two months due to flare-ups in her condition. Dr. Byron felt that it would be extremely important "that [Mrs. Cushman] always be in an environment where she is not exposed to any dust or smoke; primarily cigarette smoke, since this is known to frequently exacerbate an asthmatic condition." He stated further that a large percentage of people with intrinsic asthma suffer steady deterioration ... with increasing problems of shortness of breath and increasing severity of their exacerbations. He concluded that it would be possible that the plaintiff's ability to work would become even more limited, and for shorter periods of time.

Dr. Byron described Mrs. Cushman's pulmonary function as being essentially less than 50% of normal, and he opined that she would not be able to carry over ten pounds

consistently. He also believed that she would not be able to walk significant distances, such as more than a block, and that she could only climb one flight of stairs on rare occasions. Dr. Byron pointed to wheezing and pulmonary function studies as objective indications supportive of his diagnosis.

Both Drs. Sostheim and Byron were of the opinion that Mrs. Cushman is incapable of even sedentary work, without expected absences, rest periods during the day, and a controlled environment.

Because the record contains substantial evidence to support the plaintiff's inability to return to prior work due to her asthma and related non-exertional impairments, this case strongly suggests a determination at level five of the sequential process, with the burden on the Secretary to show that there are jobs available in the national economy that the plaintiff can perform.

Although substantial evidence does tend to support ALJ Remington's finding that the plaintiff's

> non-exertional restrictions so erode her occupational base for the full range of sedentary work that a significant number of jobs within her remaining residual funcitonal capacity do not exist in the national economy [,]

this court finds that the Secretary should be given the opportunity to adequately articulate its position or to produce evidence of a significant number of jobs suited to the plaintiff with her limitations.

The case is therefore, REMANDED to the Secretary for further proceedings consistent with this opinion. SO ORDERED.