In the

# United States Court of Appeals
### For the Seventh Circuit

No. 04-2839

MICHAEL REESE HOSPITAL AND MEDICAL CENTER,
also known as MICHAEL REESE HEALTH TRUST, and
STRATEGIC REIMBURSEMENT, INCORPORATED,

*Plaintiffs-Appellants*,

*v.*

TOMMY G. THOMPSON, not individually but in his
capacity as Secretary of the United States Department
of Health and Human Services, and ADMINASTAR
FEDERAL, INCORPORATED,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 6034—**James B. Zagel**, *Judge.*

ARGUED JANUARY 5, 2005—DECIDED OCTOBER 14, 2005

Before KANNE, ROVNER, and SYKES, *Circuit Judges.*

ROVNER, *Circuit Judge.* This case concerns a dispute
between plaintiff, Michael Reese Hospital and Medical

Center ("Michael Reese")[1] and the administrators of the federal Medicare program. Some background concerning that program is necessary in order to understand the context of this appeal. The Medicare program is a federally-subsidized health insurance program primarily for elderly and disabled individuals. The Secretary of the Department of Health and Human Services ("Secretary") administers the Medicare program through the Centers for Medicare and Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration ("HCFA"). This appeal concerns Part A of that Medicare program, which is a hospital insurance program that covered payments for the costs of inpatient hospital services, including costs incurred in connection with training and instructing residents in approved graduate medical education programs by hospitals. Much of the administration of Part A is handled by private contractors, called fiscal intermediaries, pursuant to contracts with the Secretary. Those intermediaries determine the amount of payments due to providers of services.

Until 1983, the costs of educational activities and of inpatient hospital services were reimbursed by Medicare based upon a provider's reasonable costs. In an effort to control spending, however, Congress in 1983 adopted a prospective payment system, whereby hospitals were paid a standardized rate based on the diagnostic classification for the services rendered. At that time, costs incurred in connection with graduate medical education ("GME") were still reimbursed separately on a reasonable cost basis. In April 1986, however, Congress changed the method for calculating reimbursable GME costs. Rather than reimburs-

---

[1] Strategic Reimbursement, Inc., the other appellant, is Michael Reese's agent for purposes of collecting monies owed Michael Reese from the Medicare program for the July 1, 1985 through February 28, 1991 time period.

ing hospitals for annual reasonable costs incurred in such GME programs, Congress designated a base year, 1984, for cost determinations. GME costs recognized as reasonable for that year would serve as the base figure to calculate GME reimbursements for all subsequent years. The GME Amendment directed the Secretary to determine a per resident amount by dividing each provider's 1984 GME costs recognized as reasonable, by the number of full-time equivalent residents working for the provider in 1984. That per-resident amount would then be used in subsequent years to calculate the provider reimbursement amount. Specifically, in subsequent years the provider reimbursement amount would be determined by taking the 1984 Base Year Per Resident Amount (hereinafter "Base Year Amount"), adjusting it for inflation by applying the Consumer Price Index for all Urban Consumers ("CPI-U"), and multiplying it by the hospital's weighted number of full-time equivalent residents and the hospital's Medicare patient load for the particular year. 42 U.S.C. §1395ww(h)(3).

It was not until September 1989 that the Secretary promulgated regulations to implement that GME Amendment. In those regulations, the Secretary sought to ensure that the 1984 Base Year Amount actually reflected legitimate GME costs because that figure would be used for all future years. Therefore, the Secretary authorized Medicare contractors to re-audit and re-verify each hospital's Base Year GME costs and exclude non-allowable or misclassified costs. 42 C.F.R. §§ 413.86(e)(1)(ii). The rule permitted recoupment of Medicare overpayments based on the redetermined Base Year Amount only for years in which GME payments had not become final—those which were still within the three-year reopening period. Moreover, providers could appeal the intermediary's revised base year determinations to the Provider Reimbursement Review Board ("PRRB") within 180 days of their receipt of notice of

the new determination. 42 C.F.R. § 413.86(e)(1)(v). The PRRB's decision was final unless within 60 days, the Secretary, acting through the CMS Administrator, reversed, affirmed, or modified the decision. 42 C.F.R. §§ 405.1871(b), 405.1875(a). Providers could obtain judicial review of any final decision of the PRRB or the Secretary. 42 U.S.C. § 1395oo(f)(1).

In July 1993, pursuant to that Final Rule, the intermediary Blue Cross and Blue Shield of Illinois a/k/a The Health Care Service Corporation ("HCSC") recalculated Michael Reese's Base Year Amount and issued Notices of Reopening and Amended Notices of Program Reimbursement ("NPRs") for fiscal years 1986, 1987, 1988, 1989, 1990, and 1991. Michael Reese challenged those NPRs within the 180-day appeal window, filing timely appeals in December 1993, with the PRRB disputing HCSC's Base Year Determination and the Amended NPRs for FY 1986-91. The challenge to the 1991 determination was resolved separately, and is not an issue in this appeal.

That same month a settlement, or administrative resolution, was reached regarding the Base Year Amount, which adjusted the Base Year Amount in Michael Reese's favor. In accordance with that administrative resolution, Michael Reese withdrew its challenge to the Base Year Amount, and the HCSC issued a Notice of Revised Average Per Resident Amount ("NAPRA") which incorporated the administratively-resolved amount. The NAPRA also informed Michael Reese of its right to appeal the determination to the PRRB within 180 days if it was dissatisfied with the amount. The NAPRA also included a schedule showing the revised per resident amount updated by the CPI-U through the cost report periods ending August 1991, which thus included new amounts for FY 1986-90. Satisfied with that resolution, Michael Reese did not appeal from the NAPRA, and that decision became final.

Despite the schedule showing adjusted amounts for FY 1986-90, however, Michael Reese never received any repayment from the Secretary of the amount that it presumably overpaid—an amount totaling approximately $1.5 million.[2] In May, 1996, the PRRB sent "reminder letters" to Michael Reese concerning the appeals for FY 1986-90. The reminder letters stated that the hearings on the PRRB appeals for the 1986-90 fiscal years were tentatively set for August 1997, and that the parties' position papers concerning the appeal were due in January and April of 1997. The letters further informed Michael Reese that if it failed to submit position papers, its appeals would be dismissed. The position papers were to address any issue not settled or withdrawn, even if a settlement was pending, and the failure to address an issue would result in the dismissal of that issue. The reminder letter also set forth the procedure to follow if all issues had been settled:

> If all issues have been resolved, the Provider should withdraw the appeal. If the issues have been resolved but the Provider has not yet received payment, it should notify the Board. The Board will close the case but will permit the appeal to be reinstated at the end of one year if the Provider has not been paid.

Michael Reese did not respond to that letter from the PRRB in any way, neither filing position papers nor informing the PRRB that the issues had been settled and withdrawing the appeal. Accordingly, the PRRB dismissed those appeals.

Nothing further happened concerning the matter until June 1998, when Michael Reese wrote HCSC requesting

---

[2] There is some dispute over whether Michael Reese is actually owed this on the merits, but the parties do not discuss this on appeal and it is not relevant to our disposition of the subject matter jurisdiction issue before us.

that it implement the administrative resolution and revised NAPRA. Michael Reese followed up that letter with a letter in November 1999 to AdminaStar, which had succeeded HCSC in September 1997 as intermediary, again requesting implementation of the administrative resolution and revised NAPRA. In August 2001, AdminaStar denied Michael Reese's request to reopen the cost reports for FY 1986-90. Finally, in April 2003, counsel for Michael Reese wrote to CMS and requested that CMS order AdminaStar to reopen the cost reports for FY 1986-90 to implement the Resolution and revised NAPRA. CMS affirmed AdminaStar's refusal to reopen, stating that the request was filed after the 3-year period for reopening a cost report.

Michael Reese subsequently filed this action in the district court seeking enforcement of the administrative resolution. Michael Reese based jurisdiction on the Medicare Act and the Administrative Procedure Act ("APA"), on diversity of parties, and on the mandamus statute. On defendants' motion, the district court dismissed the claim for lack of subject matter jurisdiction.

On appeal, Michael Reese asserts that the district court erred in dismissing the case, and that it has established both federal question jurisdiction and jurisdiction under the federal mandamus statute. Both of those claims of jurisdiction, however, ultimately rest upon Michael Reese's contention that it exhausted its administrative remedies. Because we agree with the district court that Michael Reese failed to exhaust those remedies, we affirm the district court's dismissal for lack of subject matter jurisdiction.

I.

In asserting federal question jurisdiction, Michael Reese relies on the APA, which provides a cause of action for "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. As Michael Reese recognizes, however, the Supreme Court has held that the APA alone does not contain an implied grant of subject matter jurisdiction for federal courts to review agency decisions. *Califano v. Sanders*, 430 U.S. 99, 105 (1977). Michael Reese identifies the Medicare Act, 1989 Final Rule, and the Secretary's regulations as providing that jurisdictional source. General federal question jurisdiction is set forth in 28 U.S.C. § 1331, which states that "district courts shall have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States," but claims under the Medicare Act must take a different route. The Social Security Act at 42 U.S.C. § 405(h) provides that "no action against the United States, the Commissioner of Social Security, or any officer or employee thereof, shall be brought under § 1331 . . . to recover on any claim arising under" the Social Security Act. That provision was incorporated into the Medicare Act through 42 U.S.C. § 1395ii, and has been held to preclude federal question jurisdiction unless the Medicare program's administrative review process has been exhausted. In *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 5 (2000), the Supreme Court held that § 405(h), as incorporated by § 1395ii, bars federal question jurisdiction under 28 U.S.C. § 1331, and requires parties to proceed instead through the special review channel that the Medicare statutes create. Thus, a provider must channel virtually all legal attacks through the Medicare program's administrative review process before it may seek judicial review. The Supreme Court recognized an exception to this where application of § 405(h) would not simply channel

review through the agency, but would mean no review at all. *Id.* at 19. Accordingly, in determining whether federal question jurisdiction is proper, we must first consider whether Michael Reese exhausted that administrative review process.

That exhaustion requirement applies as well to the plea for relief under the federal mandamus statute, 28 U.S.C. § 1361. The Supreme Court has repeatedly reserved the question as to whether mandamus relief is available at all for such Medicare claims, or whether it is foreclosed by § 405(h). *See Heckler v. Ringer*, 466 U.S. 602 (1984). In *Burnett v. Bowen*, 830 F.2d 731 (7th Cir. 1987), we joined a number of other circuits in concluding that mandamus relief is available for Medicare claims that are procedural rather than substantive in nature. We need not consider whether this is such a "procedural" claim, however, because Michael Reese cannot meet the standards for mandamus relief. The Supreme Court has recognized that mandamus relief is available only if a plaintiff "has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler*, 466 U.S. at 616.

We turn then to the exhaustion issue. The exhaustion requirement serves an important purpose, preventing the premature interference with agency processes so that the agency can function efficiently and can correct its own errors, as well as affording the parties and the courts the benefit of the agency's experience and expertise and compiling a record which is adequate for judicial review. *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). The obvious problem for Michael Reese is its failure to pursue its PRRB appeals relating to the cost reports for FY 1986-90. Once Michael Reese obtained the administrative resolution of its Base Year appeal, it apparently believed that the FY 1986-90 appeals had been resolved as well. That belief was not without some basis, given that the revised NAPRA included an attached schedule reflecting adjust-

ments for each fiscal year from 1986 to 1991. Michael Reese contends that there was nothing left to pursue. Michael Reese's challenges to the FY 1986-90 cost reports were based upon its disagreement over the Base Year Amount, which was applied to all of those years. The Final Rule made clear, however, that a challenge to the Base Year Amount could only be made in a challenge to the Base Year, not in a challenge to subsequent years in which that Base Year Amount was applied. With respect to the ensuing years, the Rule stated that a provider could challenge the number of residents or the application of the CPI-U. Because Michael Reese had already resolved the Base Year appeal by administrative resolution and had no complaints about the number of residents or the application of the CPI-U, it argues that there was nothing to be gained by pursuing the FY 1986-90 appeals. Moreover, Michael Reese contends that there was no point in appealing the Base Year challenge or the FY 1986-90 challenges to the PRRB, because it was fully satisfied with the settlement of that issue through the administrative resolution. Finally, Michael Reese contends that the PRRB could not have provided any relief even if it had pursued the FY 1986-90 appeals, because the PRRB can only affirm, reverse or modify a determination of the intermediary, but has no enforcement authority.

Although Michael Reese contends that the FY 1986-90 appeals were meaningless once the Base Year appeal was resolved, it provides no support for that contention, and the evidence of record points otherwise. The reminder letters from the PRRB set forth the procedures to be followed in perfecting the appeal, and the options for the provider to pursue if it believed that the matter had been settled. Most significant to this case, the reminder letters notified Michael Reese that if all issues had been settled but it had not yet been paid, it should notify the PRRB. The PRRB would then close the case, but would permit the appeal to

be reinstated within one year if the provider had still not
been paid. That mechanism set up by the PRRB addressed
precisely the situation here, in which a settlement had
resolved the issues but the provider had not yet received
payment. Michael Reese provides no explanation as to why
this procedure would be inadequate to address its situation,
nor has it indicated what that mechanism was designed to
resolve if not this type of situation. Michael Reese instead
asserts that the provision did not apply to it because only
the Base Year appeal had been resolved by administrative
resolution, rather than the FY 1986-90 appeals, and
therefore it could not, in these appeals, notify the PRRB of
the settlement and take advantage of that one-year window.

Michael Reese cannot have it both ways. It filed sepa-
rate appeals for the Base Year and for each of the fiscal
years from 1986-90 so that it could challenge the Base Year
Amount and could also seek repayment for the 1986-90
fiscal years if it was successful on that Base Year appeal.
Either the administrative resolution of the Base Year
appeal settled the FY 1986-90 appeals or it did not. If it did,
then Michael Reese should have followed the procedures
outlined in the reminder letter and notified the PRRB that
the issues had been settled but that it had not been paid.
That would have given the PRRB the opportunity to
address the matter if, as it turns out, Michael Reese had
still not been paid a year later. If the administrative
resolution of the Base Year appeal did not settle the FY
1986-90 appeals, then Michael Reese should have pursued
the appeals with the PRRB in order to resolve the issues.
Michael Reese cannot plausibly argue that the Base Year
appeal resolved the FY 1986-90 appeals and therefore there
was no point in pursuing it further, and simultaneously
assert that it could not have notified the PRRB of a settle-
ment because the settlement occurred only in the Base Year
appeal.

Moreover, that argument conflicts with both the complaint and the briefs, in which Michael Reese represents that the FY 1986-90 appeals were resolved by administrative resolution. For instance, the complaint alleges that Michael Reese exhausted its administrative remedies

> by filing cost report appeals with the Secretary's PRRB, having them administratively resolved by the Secretary's agent, HCSC, and then asking that the subject cost reports be reopened to implement those Administrative Resolutions affecting [Michael Reese's] GME calculation

Thus, Michael Reese in its complaint characterized the FY 1986-90 appeals as having been resolved by administrative resolution. The PRRB, however, provided for the scenario in which all issues were settled but the provider had not been paid, and Michael Reese did not avail itself of that procedure. In choosing to abandon its appeal rather than notify the PRRB of the settlement and preserve its remedies, Michael Reese failed to exhaust its administrative remedies for the challenges to the FY 1986-90 cost reports.

Michael Reese also asserts that it would have been futile to pursue the FY 1986-90 appeals because it could not challenge the Base Year Amount in those appeals. The Final Rule made clear that the Base Year Amount could only be challenged in the Base Year appeal. At the time of the reminder letter, however, when Michael Reese was faced with this decision, the Base Year Amount had been settled by administrative resolution, and the appeal period had expired so that it was a final determination. There would have been no need for Michael Reese to challenge the Base Year Amount in its FY 1986-90 appeals. Instead, Michael Reese merely had to argue that the calculations for those years were incorrect given the Base Year Amount that had already been established, as

well as the number of residents and the CPI-U. Its appeals
to the PRRB had set forth as its issue: Whether the adjust-
ment for the resident full time equivalent number and per
resident amount is proper? There is no reason to believe
that the PRRB could not have determined that
the adjustment was in fact improper given the determina-
tion in the Base Year appeal that the Base Year Amount
was erroneous. In fact, if the PRRB could not make that
determination, then it is difficult to understand why
Michael Reese filed those appeals in the first place. In other
words, if the Base Year appeal resolved everything and
there was nothing that the PRRB could do in the FY 1986-
90 appeals, then there would have been no reason to file it
at all. In fact, Michael Reese filed appeals in those years to
contest the program reimbursement for those years within
the 3-year reopening period. Its Base Year appeal was
necessary to allow it to challenge the Base Year Amount,
and the FY 1986-90 challenges were necessary to obtain
redress for the application of that incorrect Base Year
Amount in the subsequent years. There is no basis for us to
hold that the PRRB procedures could not provide that relief.
Because exhaustion of administrative remedies is a prereq-
uisite of subject matter jurisdiction under both the federal
question and mandamus theories, and Michael Reese failed
to exhaust the review process for its FY 1986-90 challenges,
the district court properly rejected that basis for subject
matter jurisdiction.

## II.

Michael Reese also argues, however, that there is jurisdic-
tion because the decision of CMS not to reopen the FY 1986-
1990 determinations itself constituted a final decision. The
Supreme Court, however, considered a similar claim in
*Your Home Visiting Nurse Services v. Shalala*, 525 U.S. 449,
453-56 (1999), and made clear that the discretionary

decision by an intermediary on a request to reopen is not subject to administrative or judicial review. Michael Reese attempts to escape the clear impact of that ruling by arguing that it sought reopening under 42 C.F.R. 405.1885(b) (which has since been amended), under which reopening was mandatory, rather than the discretionary reopening provision in 42 C.F.R. § 405.1885(a) that *Your Home* addressed. Section 405.1885(b) provided that:

> A determination or a hearing decision rendered by the intermediary shall be reopened and revised by the intermediary if, within [3 years of the date of the notice of the intermediary determination or intermediary hearing decision, CMS] notifies the intermediary that such a determination or decision is inconsistent with the applicable law, regulations or general instructions issued by [CMS] in accordance with the Secretary's agreement with the intermediary.

Michael Reese argues that such "notification" was provided by the GME Amendment and the 1989 Final Rule, which required intermediaries to reaudit and recalculate the Base Year cost reports, and then to reopen the cost reports for subsequent years to use that new Base Year Amount to adjust payments.

Even if we assume, without deciding, that those provisions constitute such notification under the regulation, that notification was not issued within the 3-year period after the intermediary's decision. Indeed, it was issued prior to the intermediary's determination, and in fact was the reason for the intermediary's determination in the first place. It was in response to that notification that the intermediary reaudited and recalculated the Base Year Amount, and reopened the cost reports for FY 1986-1990 and issued amended NPRs for those years. Michael Reese then exercised its right to appeal that Base Year Amount, and also chose to appeal the amended NPR's for FY 1986-

1990. As we have explained, however, Michael Reese failed to follow through with the FY 1986-1990 appeals, allowing them to be dismissed. There is nothing in the statutes or the regulations that requires an intermediary to reopen cost reports a second time, when the CMS notification occurred prior to the intermediary's determination and could have been appealed in the normal course.

In that respect, Michael Reese's claim is distinguishable from the situations in *Monmouth Medical Center v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001) and *In re: Medicare Reimbursement Litigation*, 414 F.3d 7 (D.C. Cir. 2005). In those cases, the D.C. Circuit held that mandamus relief was appropriate where, after the intermediaries had determined payments due hospitals using the Secretary's interpretation of the law, the HCFA Administrator issued a ruling that rescinded that prior interpretation of the law. Under the HCFA Administrator ruling, the hospitals should have been entitled to increased payments. The D.C. Circuit held that the prior determinations should have been reopened under the mandatory reopening provision in 42 C.F.R. § 405.1885(b) (1997), and given that non-discretionary duty to reopen, mandamus relief was appropriate.

Unlike those cases, however, the rulings at issue here were issued prior to the intermediary determination, and were the basis for the intermediary reopening those years in the first place. Michael Reese complains merely that the intermediary did not properly apply the law in its determination. The Supreme Court considered an analogous argument in *Pittston Coal Group v. Sebben*, 488 U.S. 105 (1988), and its analysis applies equally to this case.

In *Sebben*, the Secretary of Labor, in response to the Black Lung Benefits Reform Act ("BLBRA"), set forth interim standards for establishing total disability. The BLBRA further provided in 30 U.S.C. § 945 that claims previously denied would, upon claimant's request, be

reopened and readjudicated under the interim standards. *Id.* at 110. The claimants pursued that relief, and their claims were readjudicated under those interim standards. A portion of those interim standards, however, should not have been applied to the claims, because it was more restrictive than the prior criteria by the Secretary of Health, Education and Welfare, and 30 U.S.C. § 902(f)(2) forbade the use of more restrictive criteria. *Id.* at 113. The result was that the claims should have been adjudicated based on the less restrictive criteria.

Although holding that the less restrictive criteria should have been applied, the Supreme Court nonetheless reversed the Eighth Circuit insofar as it granted mandamus relief to those who had not exhausted remedies by appealing the adverse determinations. The Court held that in order to be entitled to mandamus relief, the claimants had to establish not only a duty to apply the less restrictive criteria, but also a duty to reopen final determinations. *Id.* at 122. The Court rejected the Eighth Circuit's reasoning that the Secretary had never fulfilled her statutory duty to readjudicate the claims because she failed to adjudicate the claims under "the proper standards." *Id.* at 121-22. This is similar to Michael Reese's contention that the Secretary never fulfilled the obligation to adjust the FY 1986-90 cost reports because it never applied the proper Base Year Amount. The Supreme Court in *Sebben* dismissed this argument, stating:

> a basis for reopening can only be found if one interprets § 945 to override the principle of res judicata not just once, but perpetually, requiring readjudication and re-readjudication (despite the normal rules of finality) until the Secretary finally gets it right. . . . That is not the way the law works. The pre-BLBRA claimants received what § 945 required: a readjudication of their cases governed by the new statutorily prescribed standards. Assuming they are correct that these new standards would have entitled them to benefits, they

would have been vindicated if they had sought judicial review; they chose instead to accept incorrect adjudication. They are in no different position from any claimant who seeks to avoid the bar of res judicata on the ground that the decision was wrong.

*Id.* at 122-23. Accordingly, the Court reversed the decision of the Eighth Circuit which had granted mandamus relief.

Michael Reese fares no better. The FY 1986-90 cost reports were reopened by the intermediary in light of the change in law. The intermediary then issued amended NPRs for those years, and there was no subsequent change in law or other notification by the CMS that would require another reopening. Instead, Michael Reese's claim is simply that the intermediary's calculations were erroneous because the Base Year Amount was improper. Assuming they are correct that the cost reports should have been recalculated in light of the settlement of the Base Year Amount, they could have been vindicated if they had pursued their administrative and judicial remedies with respect to those fiscal years. There was no non-discretionary statutory requirement that the intermediary again reopen the cost reports to afford the relief Michael Reese could have obtained by simply pursuing the appeals in the first place. Accordingly, the district court properly dismissed the case for lack of subject matter jurisdiction. The decision of the district court is AFFIRMED.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*