In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1934

CENTER FOR DERMATOLOGY AND SKIN
CANCER, LTD., et al.,

*Plaintiffs-Appellants*,

*v.*

SYLVIA MATHEWS BURWELL, Secretary
of Health and Human Services, et al.,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-CV-04926 — **Marvin E. Aspen**, *Judge.*

ARGUED SEPTEMBER 11, 2014 — DECIDED OCTOBER 21, 2014

Before BAUER, MANION, and KANNE, *Circuit Judges.*

MANION, *Circuit Judge.* Robert V. Kolbusz, M.D., is a practicing dermatologist who was indicted for Medicare fraud. After the indictment was returned, the Secretary for the Department of Health and Human Services ceased automatically processing his claims for Medicare reimbursement.

During the pretrial preparation of his defense in the criminal proceeding, Dr. Kolbusz brought this mandamus action on behalf of himself, his medical corporation, and three patients, seeking to compel the Secretary to process claims submitted for reimbursement. In response, the Secretary filed a motion to dismiss for lack of subject-matter jurisdiction, arguing that Dr. Kolbusz failed to exhaust his administrative remedies before proceeding with his mandamus action. The district court agreed with the Secretary and dismissed this case for lack of subject-matter jurisdiction. Dr. Kolbusz appealed and we affirm.

## I. Facts

Robert V. Kolbusz, M.D., owns and operates the Center for Dermatology and Skin Cancer, Ltd., in northern Illinois. He was a participating provider of Medicare from 1993 until December 2012. Because he was a participating provider, Dr. Kolbusz received payment for services rendered to patients directly from Medicare. On October 3, 2012 he was indicted by a federal grand jury for Medicare fraud. *See United States v. Kolbusz,* No. 12 CR 782 (N.D. Ill.) (Lee, J.).[1] As a consequence of the indictment, the Secretary's designees imposed fraud prevention procedures on Dr. Kolbusz's practice, including

---

[1] On October 20, 2014, Dr. Kolbusz was convicted of 3 counts of mail fraud pursuant to 18 U.S.C. § 1341 and 3 counts of wire fraud pursuant to 18 U.S.C. § 1343. These convictions have no bearing on the substance of this appeal.

payment suspension, resulting in his ultimate withdrawal from the Medicare program.[2]

In July 2013, Dr. Kolbusz filed suit against the Secretary of the Department of Health and Human Services (the "Secretary") and her contractors, asserting three bases for subject-matter jurisdiction: (1) federal question jurisdiction, § 28 U.S.C. 1331; (2) the Medicare Act, 42 U.S.C. §1395 *et seq*; and (3) mandamus, 28 U.S.C. § 1361.[3] The suit was directed at the Secretary's acts or omissions regarding two distinct batches of Medicare claims submitted for reimbursement and sought to compel her to process those claims. Dr. Kolbusz allegedly sought initial determination of a batch of Medicare reimbursement claims covering October 4, 2012 through December 31, 2012. Of the 783 claims he submitted, 55 were denied. Dr. Kolbusz timely sought a redetermination of the 55 denied claims, which was granted, but denied on the merits. Dr. Kolbusz alleges that he appealed these decisions to the second level of administrative review (reconsideration), but that he

---

[2]  From January 1, 2013 through the present, Dr. Kolbusz continued to receive indirect payments from Medicare by serving as his patients' "appointed representative." Under this arrangement, his patients receive reimbursement directly from Medicare and then provide payment to him for dermatology services rendered. The Secretary contends that this "work-around" violates the spirit of Dr. Kolbusz's suspension, but it is unclear from this record that it was in violation of any statute or regulation. Gov't Br. 10.

[3]  In October 2013, he filed an amended complaint, alleging essentially the same claims.

has yet to receive a response regarding the qualified independent contractor's ("QIC") reconsideration.

Dr. Kolbusz's second batch of claims was allegedly submitted after he withdrew as a participating provider in the Medicare program on January 1, 2013. Dr. Kolbusz alleges that of the "approximately 2300" claims submitted after January 1, 2013, including those filed by co-plaintiff patients, "most" have not yet received initial determinations. He alleges that "approximately 250" of the claims were denied through initial determinations, and then denied again on appeal through reconsideration, Dr. Kolbusz alleges that these 250 claims are currently pending review before an ALJ. In his complaint, he sought to compel the Secretary to process all of these claims.

In March 2014, the district court granted the Secretary's motion to dismiss for lack of subject-matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). Dr. Kolbusz  appeals.

## II. Analysis

### A. Standard of review.

Motions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996)."In the context of a motion to dismiss for lack of subject matter jurisdiction, we accept as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff," *Iddir v. INS,* 301 F.3d 492, 496 (7th Cir. 2002), but a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met. *See Kontos v. U.S. Dep't Labor*, 826 F.2d 573, 576

(7th Cir. 1987). Although "[w]e review a dismissal for lack of subject matter jurisdiction *de novo*," *Doctors Nursing & Rehab. Ctr. v. Sebelius,* 613 F.3d 672, 676 (7th Cir. 2010), "we review the district court's resolution of jurisdictional factual issues for abuse of discretion." *Sapperstein v. Hagar,* 188 F.3d 852, 856 (7th Cir. 1999).

**B. Dr. Kolbusz's failure to exhaust administrative remedies before seeking mandamus.**

The Secretary has implemented a four-step administrative process to review and adjudicate challenges to determinations rendered on claims for Medicare reimbursement. 42 C.F.R. § 405.904. First, where a Medicare contractor makes an initial adverse determination on a claim, the claimant may request redetermination by the contractor. 42 C.F.R. §§ 405.904, 405.940–958. Second, if the claimant is dissatisfied with the redetermination decision, he may request a reconsideration of the claim by a QIC. 42 C.F.R. §§ 405.904, 405.960–966. Third, if the claimant is dissatisfied with the QIC's reconsideration, or if the QIC has surpassed its 60-day deadline to issue its decision, the claimant may request a hearing before an ALJ, for which the party must also meet the amount-in-controversy requirement. 42 C.F.R. §§ 405.904, 405.970, 405.1000. Fourth, if the claimant is dissatisfied with the decision of the ALJ, or if the ALJ does not issue a decision within the regulation's time frame, the claimant may request that the Medicare Appeals Council ("MAC") review the case. 42 C.F.R. §§ 405.1048, 405.1100, 405.1104. Once the MAC issues a decision, or if the MAC fails to review the ALJ's decision within the applicable adjudication period, the claimant may then file suit in federal district court. 42 C.F.R. §§ 405.1130, 405.1132.

Title 28 U.S.C. § 1361 provides that "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." The Supreme Court has emphasized that "[t]he common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." *Heckler v. Ringer,* 466 U.S. 602, 616 (1984). If a plaintiff's allegations survive *Ringer's* jurisdictional threshold, three elements must be met in order for the court to issue a writ: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; (3) no other adequate remedy available." *Burnett v. Bowen,* 830 F.2d 731, 739 (7th Cir. 1987).

Critically, Dr. Kolbusz's amended complaint concedes that the furthest step his claims have proceeded to is the third level of administrative review. Am. Compl. ¶ 46. Thus, he did not exhaust the administrative appeals process before he sought mandamus. In support of his decision to forego exhausting the administrative appeals process, Dr. Kolbusz argues that mandamus jurisdiction extends over his claims because he does not seek an adjudication or review of the merits of the Medicare claims, but rather to challenge the Secretary's "procedures" for processing claims. *See* Appellant Br. 23. In support of this argument, Dr. Kolbusz relies on *Burnett*, where, citing other circuits, we stated that "the mandamus statute provides jurisdiction in cases challenging the procedures used in administering Social Security benefits but unrelated to the

merits." 830 F.2d at 737, and our subsequent decision in *Michael Reese Hosp. and Med. Ctr. v. Thompson,* 427 F.3d 436, 441 (7th Cir. 2005), where we cited *Burnett* for the proposition "that mandamus relief is available for Medicare claims that are procedural rather than substantive in nature." We now turn to these contentions.

We previously applied *Ringer'*s holding to the precise question of the availability of mandamus relief in the context of Medicare reimbursement claims. *See Burnett,* 830 F.2d at 736–40. On that occasion, we joined a number of other circuits in concluding that mandamus relief is indeed available for Medicare claims that are procedural rather than substantive in nature. *Id.* at 738. Yet, when subsequently confronted with a case that posed the "procedural" or "substantive" question in *Michael Reese,* we did not decide it because "[t]he Supreme Court has recognized that mandamus relief is available only if a plaintiff 'has exhausted all other avenues of relief and only if the defendant owes him a clear and nondiscretionary duty,'" and the plaintiff had not satisfied the exhaustion requirement. *Michael Reese,* 427 F.3d at 441 (quoting *Ringer,* 466 U.S. at 616). Accordingly, "[b]ecause  exhaustion of administrative remedies is a prerequisite of subject matter jurisdiction under … mandamus theories … and [plaintiff] failed to exhaust the review process … the district court properly rejected that basis for subject matter jurisdiction." *Id.* at 443. In short, the exhaustion requirement is still applicable to procedural challenges.

Today this case arrives to us in the same procedural posture as *Michael Reese,* so we have no reason to decide the same question that was not ripe in that instance. 427 F.3d at 441 ("We need not consider whether this is such a 'procedural' claim,

however, because Michael Reese cannot meet the standards for mandamus relief."). Despite Dr. Kolbusz's attempts to distinguish this case from *Michael Reese* and its predecessors, controlling authority from the Supreme Court and this Circuit is airtight that a litigant may not circumvent the administrative appeals process by seeking mandamus. *See Ringer,* 466 U.S. at 616 (dismissing plaintiff's mandamus claim against HHS concerning the denial of Medicare reimbursement, where plaintiffs failed to exhaust their administrative remedies before bringing suit in federal court); *Michael Reese,* 427 F.3d at 441, 443 (applying *Ringer* and holding that the exhaustion requirement applies to the request for relief under the federal mandamus statute); *Ancillary Affiliated Health Servs., Inc. v. Shalala,* 165 F.3d 1069, 1070 (7th Cir. 1998) (relying on *Ringer* to reject the substantive-procedural distinction and holding that "even characterizing [plaintiff] Ancillary's claim as a due process claim does not relieve it of its obligation to exhaust its administrative remedies"). Although we issued a writ of mandamus in *Burnett,* there "a writ of mandamus [wa]s his only available remedy" because he had "pursued all of his possible appeals within the Social Security Administration." 830 F.2d at 740. Similar exhaustion has not occurred here.

Dr. Kolbusz argues that "whether Plaintiffs have exhausted their administrative remedies is an issue to be determined as to whether he is entitled to mandamus relief, not as to whether the District Court has jurisdiction to adjudicate the Amended Complaint." Appellant Br. 14. But as we have just explained, that characterization of the law is incorrect. Dr. Kolbusz is actually arguing that he has *effectively* exhausted the administrative appeals process, so he should be *excused* from complet-

ing it. In support, he cites 42 U.S.C. 1395ff(a)(2)(A), and argues that it requires the government to process all claims within 45 days. If Dr. Kolbusz were reading the statute correctly, he might have an argument that this case is distinguishable from precedent. However, that is simply not the case here. The text of the statute does not say what Dr. Kolbusz argues. Title 42 U.S.C. § 1395ff(a)(2)(A) states that when "*promulgating regulations,*" the Secretary must issue an "initial determination" regarding the claim in 45 days or less. 42 U.S.C. § 1395ff(a)(2)(A) (emphasis added). The Secretary has complied with this statutory obligation by setting the time period for "initial determinations" at 30 days. *See* 42 C.F.R. 405.922.

A "clean claim" is one "that has no defect or impropriety (including any lack of any required substantiating documentation) or particular circumstance requiring special treatment that prevents timely payment[.]" 42 U.S.C. § 1395u(c)(2)(B)(1). By the plain text of § 1395ff(a)(2)(B), claims requiring "special treatment that prevents timely payment from being made" under § 1395u(c)(2) are exempt from compliance with this deadline. Because claims subject to fraud review are not clean claims, they are not subject to any mandatory time frame for payment. 42 U.S.C. § 1395u(c)(2); *see* 42 C.F.R. § 405.902. Unfortunately for Dr. Kolbusz, he is not entitled to reap the benefits of 42 C.F.R. 405.922 while he labors under indictment for Medicare fraud because the Medicare Act and the Secretary's regulations provide time frames only for processing "clean claims." In this instance, the proper avenue for pursuing disputes with claims designated by the Secretary as "unclean" is the administrative appeals process that Dr. Kolbusz elected not to follow by filing this suit. Moreover, even if Dr. Kolbusz's

interpretation of 42 U.S.C. 1395ff(a)(2)(A) were correct, the proper remedy would not be mandamus, but interest that accrues on the unpaid amount. §1395u(c)(2)(c); *see also* 42 C.F.R. § 405.922.

At some point the inaction of Congress or the Secretary may result in a due process violation where the extraordinary remedy of mandamus is required to compel governmental action. But that is not this case. Dr. Kolbusz may wish to petition Congress or the Secretary to enact a claims-payment deadline. However, in the absence of such a statute or regulation imposing a claims-payment deadline, Dr. Kolbusz cannot successfully secure jurisdiction for us to hear his mandamus action until he has first exhausted the administrative appeals process.

### III. Conclusion

Dr. Kolbusz's failure to exhaust Medicare's administrative appeals process precludes subject-matter jurisdiction of his mandamus action. For the foregoing reasons, the judgment of the district court is AFFIRMED.